UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERACTIVE CONTENT
ENGINES, LLC,

          Plaintiff,

v.

RUMBLE USA INC. and
RUMBLE, INC.,

          Defendants.

Case No.: 8:22-cv-01949-KKM-AEP

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL DISCOVERY AND MOTION FOR DISCOVERY SANCTIONS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY ............................................................1

II.   STATEMENT OF PERTINENT FACTS ......................................................6

    A.   That Defendants Did Not Have Technical Documents Regarding Rumble's CDN System Is Not Only Undisputed, But Also Neither Unusual Nor Surprising. ..................................................6

    B.   Walter Sturm's Testimony Confirms Rumble Did Not Have Documents Depicting Or Describing Its CDN System Until He Created The First Ones..........................................................................7

    C.   The Detailed Description Of Rumble's CDN System Set Forth In Defendants Non-Infringement Contentions Is Sufficient For A Person Of Skill To Determine Infringement Or Non-Infringement. .........................................................................................8

    D.   Several Zoom Meetings Were Required In Order To Prepare The Detailed Description Of Rumble's CDN System Set Forth In Defendants' Non-Infringement Contentions. ...................................9

    E.   Both Mr. Ellis And Mr. Sturm Were Knowledgeable And Well-Prepared To Testify And Were Able To Answer Questions Within The Topics For Which They Were Designated. .....................11

    F.   Plaintiff's Notice Of Deposition For The November 14, 2023 Date Was Defective, And The Deposition Was Taken On November 29, 2023. ...........................................................................12

    G.   This Court Did Not Order That Plaintiff Could Take A Deposition On Discovery. ..................................................................13

III.  LEGAL STANDARDS REGARDING DISCOVERY SANCTIONS .........13

IV.   PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES ASSOCIATED WITH ITS MOVING FORWARD WITH ITS DEFECTIVELY-NOTICED NOVEMBER 14, 2023 DEPOSITION DATE, KNOWING THAT NO RUMBLE WITNESS COULD ATTEND, IS UNWARRANTED ..............................................................15

V.    PLAINTIFF'S ASSERTION THAT RUMBLE'S CORPORATE REPRESENTATIVES LACKED KNOWLEDGE REGARDING THE NOTICED TOPICS IS UNSUPPORTABLE.......................................17

VI.   PLAINTIFF'S REQUEST FOR AN ADDITIONAL 7-HOUR
      30(b)(6) DEPOSITION IS UNWARRANTED .............................................18

VII.  CONCLUSION.............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Barash v. Kates*,
  585 F. Supp. 2d 1347 (S.D. Fla. 2006) ...............................................................14

*Bernal v. All Am. Inv. Realty, Inc.*,
  479 F. Supp. 2d 1291 (S.D. Fla. 2007) ...............................................................14

*Bockelmann v. USAA Cas. Ins. Co.*,
  No. 21-81080-CV, 2022 WL 981961 (S.D. Fla. Feb. 11, 2022) ........................15

*Hartford Fire Insurance Company v. New York Mart Group, Inc.*
  (S.D. Fla., Mar. 21, 2022) 2022 WL 3682082 ...................................................15

*Higgs v. Costa Crociere S.P.A. Co.*,
  969 F.3d 1295 (11th Cir. 2020) ..........................................................................13

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
  851 F.3d 1218 (11th Cir. 2017) ..........................................................................13

*Ruiz v. Sharkninja Operating LLC*,
  2023 WL 2456509 (M.D. Fla., Mar. 10, 2023) ...................................................18

## Other Authorities

Fed. R. Civ. P. 30(a)(2)(A)(ii) ..................................................................................18

Fed. R. Civ. P. 30(b)(6) .......................................................................................16, 18

Local Rule 3.04 .........................................................................................................12

Rule 26(g) .................................................................................................................16

Rule 26(g), (3) ..........................................................................................................20

Rule 37(b)(2)(C) .......................................................................................................15

# I.   INTRODUCTION AND SUMMARY

Plaintiff is intent on diverting the focus of this case away from the merits, and making this a case about discovery.  Given the lack of merit to Plaintiff's case revealed in discovery, this is understandable, yet inappropriate.

After Defendants produced (using search terms Plaintiff provided) over 50,000 pages of discovery to Plaintiff, Plaintiff identified **a total of five documents** Plaintiff proclaims are smoking-gun-type documents supposedly showing Defendants engaged in sanctionable bad-faith discovery abuse by allegedly withholding highly "relevant" documents.  One of the five documents contains job listings Rumble intended to advertise, which is clearly irrelevant.  Another merely shows the physical layout of hardware in a hardware rack at a Rumble data center.  Also clearly irrelevant. The other three are equally irrelevant to any merits-related issues in this case.  Plaintiff, nonetheless, intends to provide these five irrelevant documents to the Court for *in camera* inspection (the "In Camera Documents").[1]

As shown in the attached Declaration of Defendants' technical expert, Dr. Mahdi Eslamimehr ("Mahdi Declaration"), none of the five documents disclose anything about how Rumble's Content Delivery Network ("CDN") system works

---

[1] Defendants' counsel suggested to Plaintiff that the parties jointly request the hearing on this Motion be in person rather than remote so that these and other documents could be shared and discussed with the Court in person.  Plaintiff refused.  Defendants' counsel remains willing to fly from Los Angeles to Tampa to attend the hearing in person if the Court so desires.

in terms of retrieving stored videos upon demand. That issue – and nothing else – is relevant to the merits of this case.[2] The Mahdi Declaration discusses the documents and the detailed description of Rumble's CDN system provided to Plaintiff, and explains:

- the In Camera Documents provide no information that is relevant to the issues of infringement and non-infringement; and provide no information that is in any way inconsistent with the documentation and description of Rumble's CDN system provided to Plaintiff (¶¶ 19 to 27); and

- the detailed description of Rumble's CDN system provided to Plaintiff in Defendants' Non-Infringement Contentions (adopted by certified discovery responses) is sufficient to allow a person of skill in the art to determine how the system works and whether or not there is infringement of the asserted claims of Plaintiff's Patents. (¶¶ 28 to 33).[3]

The Mahdi Declaration also confirms:

- When Dr. Eslamimehr was retained in this matter to assist in formulating Defendants' Non-Infringement Contentions in late 2022, he requested various technical documents from Rumble relative to its CDN system. Because Rumble did not have such documents, there were a series of Zoom meetings held with the Rumble CTO and counsel during which the system was discussed, and thereafter a detailed description of it was

---

[2] That Plaintiff's Motion lacks any supporting evidence to establish the supposed relevance of these documents is reason enough to deny the Motion.

[3] Significantly, Plaintiff has not contended otherwise, and its Motion is not supported by any declaration from a person of skill in the art contending otherwise. This is a concession by silence that the detailed description of Rumble's CDN system in Defendants' Non-Infringement Contentions is sufficient.

prepared for, and included in, the Non-Infringement Contentions (¶11);

- It is <u>not</u> unusual or surprising that Rumble did not yet have such documents, given it is a relatively young company still in rapidly expanding "start-up" mode (¶¶ 34 to 38); and

- The Rumble system does not infringe. (¶29).[4]

The deposition testimony of Walter Sturm, Rumble's CDN Architect (attached as **Exhibit 1** ("Sturm Depo.")), confirms:

- When he joined Rumble in April 2023 as its first CDN Architect, he asked everyone he thought might have documents depicting or describing Rumble's CDN system for such documents, and was told there were no such documents. (Sturm Depo. at 17:10-13, 18:24-19:7, 30:8-18).[5]

- He was tasked with creating such documents, which he did (the "Sturm Documents"). The Sturm Documents were produced to Plaintiff months ago, well before the 30(b)(6) deposition at which Mr. Sturm testified. The produced Sturm Documents even included documents that were in whole or part forward

---

[4] Plaintiff's Patents describe and claim a system in which videos are cut into chunks and sub-chunks, those chunks and sub-chunks of the video are separately stored in storage devices, and then the chunks and sub-chunks are reassembled upon demand for viewing. Defendants' Non-Infringement Contentions and the Mahdi Declaration explain that Rumble's CDN system does <u>not</u> do this, which is undoubtedly why Plaintiff wants to avoid the merits of the case and instead focuses on imaginary, manufactured discovery disputes. Because Rumble's system stores and retrieves <u>the entire video</u> rather than chunks and sub-chunks to be reassembled upon demand for viewing, Rumble does not have documents showing otherwise. Plaintiff's Patents disclose and claim technology that is now over 20 years old. Today's technology does not require that videos be segmented and separately stored in chunks and sub-chunks to be reassembled upon demand for viewing.

[5] Of course, if such documents did exist, they would have been provided to him as Rumble's newly-hired CDN Architect.

looking, and do not show Rumble's current system. (*Id*. at 6:8-13, 17:14-16, 22:10-17, 34:22-25, 35:3-10).[6]

The deposition testimony of Michael Ellis,[7] General Counsel of all Rumble companies, confirms:

- Rumble did not have any of the documentation Dr. Eslamimehr requested; and

- Mr. Ellis attended the various Zoom meetings with Dr. Eslamimehr and Rumble's CTO described in the Mahdi Declaration.

Mr. Ellis' testimony is consistent with the Mahdi Declaration in this regard.

The assertion that neither Mr. Ellis nor Mr. Sturm were adequately prepared, and thus could not respond to relevant questions, is unsupportable. A properly supported motion would include a long litany of the relevant and topical questions posed to the witnesses which they were unable to answer. Plaintiff's Motion includes nothing of the sort – because the witnesses answered every question within the scope of the topics on which they were designated to testify.

Mr. Ellis was designated to testify and did testify on two topics: (1) the structure of the various Rumble companies, and (2) the process by which the

---

[6] It is significant, and telling, that during the deposition of Mr. Sturm, Plaintiff's counsel did not ask a single substantive question about whether Rumble's CDN system separately stores, retrieves, and reassembles chunks and sub-chunks of videos upon a request for viewing. Indeed, the words "chunk" and "sub-chunk" do not appear at all in the Sturm Deposition transcript. Plaintiff is avoiding the merits.

[7] *See infra* pp. 10-11.

detailed description of Rumble's CDN system set forth in Defendants Non-Infringement Contentions was prepared. As Mr. Ellis is General Counsel for each of the Rumble companies, he was able to testify from personal knowledge about the structure of the companies. And since Mr. Ellis attended the Zoom meetings with Rumble's CTO and Dr. Eslamimehr, Mr. Ellis has personal knowledge of the process of preparing the detailed description of Rumble's CDN system and so testified. Mr. Sturm, as Rumble's CDN Architect and the creator of the Sturm Documents, was able to testify and did testify about Rumble's documentation (and lack thereof) for the Rumble CDN system. Plaintiff's position on this issue is entirely unsupportable.

The portion of Plaintiff's Motion regarding its defectively-noticed November 14, 2023 deposition[8] is equally baseless. The Notice for the 30(b)(6) deposition was defective as (1) it was untimely and (2) Plaintiff did not confer with Defendants on the noticed date before serving the Notice. In addition, Plaintiff was advised before the deposition that Rumble witnesses would not be able to appear on that date, but that Defendants would work cooperatively to schedule a mutually convenient date – which was immediately done. The deposition was taken on November 29, 2023. Both Mr. Ellis' and Mr. Sturm's portions of the deposition were conducted remotely, so no travel was involved. And to the extent

---

[8] *See* Exh. K2, Plaintiff's Motion (Dkt. 74)

Plaintiff's counsel prepared for the November 14 deposition date, that preparation was equally required for the November 29 deposition. The case law is clear that under these circumstances, sanctions are improper, notwithstanding Plaintiff's convening a deposition it knew would not take place solely for the purpose of manufacturing a baseless discovery dispute.

Last, the portion of the Motion seeking a full 7 hours for a further 30(b)(6) deposition, in addition to the approximately 4.5 hours of testimony already taken, is premised upon Plaintiff's fanciful position that "the first deposition did not take place."[9] There is no case law supporting that notion.

Accordingly, Defendants respectfully submit that Plaintiff's Renewed Motion to Compel Discovery and Motion for Discovery Sanctions should be denied.

## II.   STATEMENT OF PERTINENT FACTS

### A.   That Defendants Did Not Have Technical Documents Regarding Rumble's CDN System Is Not Only Undisputed, But Also Neither Unusual Nor Surprising.

Plaintiff is unwilling to accept the simple fact that Rumble did not have documents depicting and/or describing how its CDN system stores and retrieves videos upon demand for viewing before Mr. Sturm, hired in April 2023, created them. But that is the case. The Mahdi Declaration explains in detail that this is

---

[9] This is the statement made by Plaintiff's counsel during the "Meet & Confer" for its Motion as its basis for demanding another full 7-hour 30(b)(6) deposition.

neither unusual nor surprising, and is in fact common for quickly growing start-up companies such as Rumble:

> 36. In the dynamic and fast-paced environment of companies like Rumble, however, the creation and maintenance of comprehensive software and system documentation often take a back seat to more immediate objectives. This scenario is analogous to a chef in a busy kitchen, who must prioritize quickly serving meals over documenting recipes. For startups like Rumble, the primary driver is to bring a product to market as swiftly as possible, establish a foothold, and respond to competitive pressures. In this race against time, thorough documentation can be seen as a secondary or no concern, something that can be developed or refined later. This mindset stems from the need to demonstrate product viability and attract investors or customers, where the speed of development and deployment often trumps the completeness of documentation.

Plaintiff's Motion provides no contrary evidence, and relies entirely on supposition and innuendo, neither of which are sufficient to support the award of an order compelling further discovery, let alone an award of sanctions against Rumble.

**B.      Walter Sturm's Testimony Confirms Rumble Did Not Have Documents Depicting Or Describing Its CDN System Until He Created The First Ones.**

During his deposition, Mr. Sturm testified as follows:

> Q: So did you spend any time preparing for today's deposition by researching what Rumble's policies and procedures are for creating and maintaining documents?
>
> A: I had done so prior to my involvement in this case. So, part of my responsibility when I was hired was to document the delivery architecture. Rumble is a new, a young and immature growing company and I was surprised when I came on board that there were -- you know, coming on board needing to,

> having a need to understand what's in place to be able to build off of and design, you would, you would naturally start with any existing documents. And there was a, a -- I would say a shocking lack of documents, but -- because it's very common for small starting companies. There really is no documentation for anything existing. So the documents that were provided were documents that I have developed over the last several months and shared with the counsel.

(Sturm Depo. at 16:24 – 17:16).

> Q: Did you ask Wojciek or Slava in your conversations with them what practices or procedures they had for creating or maintaining or storing documents describing Rumble's online video platform?
>
> A: There were no documents prior to my development.

(*Id.* at 17:17-21).

Given this testimony and the Mahdi Declaration on this topic, Plaintiff's mistaken beliefs and unfounded accusations relative to Rumble's lack of technical documentation can finally be laid to rest.

## C. The Detailed Description Of Rumble's CDN System Set Forth In Defendants' Non-Infringement Contentions Is Sufficient For A Person Of Skill To Determine Infringement Or Non-Infringement.

The Mahdi Declaration states:

> 33. In conclusion, Rumble's Non-Infringement Contentions (even without the Sturm Documents) provide more than sufficient information to determine whether the Rumble system infringes the patent claims asserted by Plaintiff. The Sturm documents confirm and do not contradict Rumble's Non-Infringement Contentions.

That Plaintiff has not submitted any declaration from a person skilled in the

art on this issue is telling, and underscores the baselessness of Plaintiff's Motion.

Plaintiff again shies away from anything having to do with the merits of its case.

> **D.** **Several Zoom Meetings Were Required In Order To Prepare The Detailed Description Of Rumble's CDN System Set Forth In Defendants' Non-Infringement Contentions.**

As the Court may recall, these facts were presented to the Court at the

May 18, 2023 discovery hearing. Subsequently, Rumble provided supplemental

and certified discovery responses that confirmed these facts as well. Plaintiff

persists, even in the face of these facts, to beat this long-dead horse.

The Mahdi Declaration states:

> 10. I was retained by Rumble in the fall of 2022. Shortly after I was engaged in this matter, I sent an email to counsel for Rumble containing a "Request for Rumble's technical documents." A copy of that email is reproduced below. Shortly thereafter, I was informed by counsel that he had been advised by Rumble that none of the documents I requested existed, although Rumble expected in the future to create some documents that might contain some of the information I requested.

> 11. Thereafter, in order to obtain an understanding of how the Rumble CDN system functions relevant to the issue of infringement or non-infringement of Claim 1 of the ICE Patents, there were a series of Zoom meetings that included me, members of my team, Rumble's CTO and counsel. Based upon the information obtained in those Zoom meetings, and my expertise and experience in this technology (and that of my team), we worked with Rumble's CTO and counsel to prepare the portion of Rumble's Preliminary Non-Infringement Contentions that describes in detail how the system works. I advised counsel at that time that the description of the Rumble system was true and correct to the best of my knowledge based on our Zoom meetings with the Rumble CTO and my (and my team's) experience and expertise in this type of technology.

Mr. Ellis testified as follows at the November 29 deposition:

> Q: So are you aware that the experts that you're speaking about from Quandary Speak sent a list of documents that they wanted to see in forming the non-infringement contentions to Rumble. Are you aware of that?
>
> A: Yes, I'm aware that they made a request.
>
> Q: What kind of documents did they request from Rumble?
>
> A: Technical documents, I don't know how to describe them. I'm again not the technical expert.
>
> Q: Did you see the list of documents that the experts requested of Rumble, in terms of specifically what they were asking for?
>
> A: I don't recall whether I saw the list or not. If I had seen it, it wouldn't have meant anything to me.
>
> Q: Is it Rumble's position that, out of all the documents the experts requested, that none were available because none existed?
>
> A: Yes. My recollection is that they requested technical documents. This was in the process of preparing the non-infringement contentions, originally, that no such documents along the, of the sort they requested existed. So, the non-infringement contentions were prepared based on their discussions over a number of meetings, virtual meetings and phone calls with Wojciek.
>
> Q: Were you involved in that process?
>
> A: I participated in those meetings, yes.
>
> Q: And what was your role in those meetings?
>
> A: As an attorney for Rumble.
>
> Q: Was any technical documentation of any kind provided by Rumble to those experts, as part of that process?
>
> A: Later, after Mr. Sturm joined Rumble in the Spring of 2023, and we learned Mr. Sturm had created documents, that those documents Mr. Sturm created were provided to the experts.
>
> Q: And are those the ones that Mr. Wojcio went over with Mr. Sturm today in the deposition, the CDN, perhaps, 2.0,

2.02, 2.03 and 2.04?

A: Yes. I believe they also saw that map earlier.

Q: Are you aware of any other documentation, other than what I just mentioned and what you just mentioned was provided to those experts?

A: No, I'm not aware of any others. I know, again at that point, they engaged in additional discussions with Mr. Sturm, with Wojciek and prepared the red lines to that portion of the non-infringement contentions we're discussing today.

Ellis Depo. at 25:10-27:2.

### E. Both Mr. Ellis And Mr. Sturm Were Knowledgeable And Well-Prepared To Testify And Were Able To Answer Questions Within The Topics For Which They Were Designated.

Plaintiff's Motion begs the questions: (1) What questions within the topics on which Mr. Ellis and Mr. Sturm were designated to testify were they unable to answer?  (2) Where is the list of those unanswered questions that is the *sine qua non* of an ill-prepared witness?  Plaintiff has not and cannot provide one because both Mr. Ellis and Mr. Sturm were well-prepared and able to provide answers to Plaintiff's questions.

Distilled, Plaintiff's position is based solely on Plaintiff's view that a witness must have reviewed a large number of documents and interviewed a large number of people in order to be adequately prepared.  Not surprisingly, there is no law to that effect, and Plaintiff cites none.  The indisputable fact is that Mr. Ellis' and Mr. Sturm's preparation, work history and experience within Rumble, and personal knowledge prepared them to answer questions on the topics for which they were

designated, and they did so.

### F. Plaintiff's Notice Of Deposition For The November 14, 2023 Date Was Defective, And The Deposition Was Taken On November 29, 2023.

Plaintiff's Notice was non-compliant with Local Rules in several ways.

Namely, the Middle District Discovery Handbook provides in pertinent part:

> An attorney is expected to accommodate the schedules of opposing counsel. In doing so, the attorney should normally pre-arrange a deposition with opposing counsel before serving the notice. If this is not possible, counsel may unilaterally notice the deposition while at the same time indicating a willingness to be reasonable about any necessary rescheduling… Additionally, Local Rule 3.04 requires the party noticing the deposition to give a minimum of fourteen days' written notice to every other party and the deponent, absent agreement or an order based upon some exigent circumstance. And giving substantially more than fourteen days' notice is strongly encouraged.

Prior to serving this Notice, Plaintiff failed to engage in any "pre-arrangement" with Rumble's counsel to accommodate the schedules of Rumble counsel and the Rumble corporate witnesses. Further, Plaintiff's Notice was untimely in that it was not served at least fourteen days before the date noticed. Plaintiff certainly did not give "substantially more than fourteen days' notice." As the parties do not have an electronic service agreement in place, Plaintiff's service by email was equivalent to service by mail. [10] As such, Plaintiff failed to provide

---

[10] The parties do not have an agreement that email service is tantamount to personal service rather than service by mail. Defendants' counsel proposed an email service protocol to Plaintiff; *i.e.*, when email service would be tantamount to personal service and when it would not, but Plaintiff did not respond to the proposal.

Rumble with the required 14-day notice pursuant to Local Rule 3.04. In addition, there were no exigent circumstances precluding Plaintiff's counsel from pre-arranging a deposition date with Defendants before serving the notice. Finally, the 30(b)(6) deposition did take place two weeks later on the mutually-agreed date of November 29, 2023. Plaintiff's complaint about a slight delay in a deposition it improperly noticed rings hollow.

### G. This Court Did Not Order That Plaintiff Could Take A Deposition On Discovery.

At the May 18, 2023 hearing, this Court stated in response to Plaintiff's request to be allowed to take a 30(b)(6) deposition on discovery issues:

> At that point, you can go forward and take your depositions. At this stage, I am not gonna order any discovery on discovery, although I will consider that if necessary down the road depending what is the result of any deposition that's taken.

(Hearing Tr. at 23:13-17).[11]  Plaintiff's Motion engages in revisionist rewriting of this Court's Order to spin a tale of discovery abuse, which is simply untrue. The undeniable facts are that Rumble has been forthcoming in discovery and fully complied with this Court's prior discovery Order.

## III.  LEGAL STANDARDS REGARDING DISCOVERY SANCTIONS

A district court may impose sanctions pursuant to its inherent authority. *See Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1304 (11th Cir. 2020) (noting

---

[11] *See* Exh. A, Plaintiff's Motion (Dkt. 74)

that courts have the inherent authority to impose sanctions). To impose sanctions pursuant to its inherent authority, however, a court must make a finding of bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 n.4 (11th Cir. 2017) (noting that "[t]he key to unlocking a court's inherent power is a finding of bad faith"). Bad faith can be found in three instances: (1) when fraud has been committed on the court, *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)); (2) when a party "delays or disrupts the litigation, or hampers the enforcement of a court order," *id*. (citing *Chambers*, 501 U.S. at 46); or (3) when "an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent," *id*. (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). In determining whether a party acted in bad faith, a court should primarily assess the "conduct and motive of a party." *Id*. (quoting *Rothenberg v. Sec. Mgmt. Co., Inc*., 736 F.2d 1470, 1472 (11th Cir. 1984)). The court's inherent authority to issue sanctions includes the "striking of frivolous pleadings or defenses, disciplining lawyers, punishing for contempt, assessment of attorneys' fees and costs, and outright dismissal of a lawsuit." *Bernal v. All Am. Inv. Realty, Inc*., 479 F. Supp. 2d 1291, 1338 (S.D. Fla. 2007) (citing *Allapattah Servs., Inc. v. Exxon Corp*., 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005)).

None of these circumstances exist here.

///

**IV. PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES ASSOCIATED WITH ITS MOVING FORWARD WITH ITS DEFECTIVELY-NOTICED NOVEMBER 14, 2023 DEPOSITION DATE, KNOWING THAT NO RUMBLE WITNESS COULD ATTEND, IS UNWARRANTED**

Here, Plaintiff is seeking attorneys' fees for preparing for and attending a deposition of Rumble's corporate witness that was defectively noticed for November 14, 2023, and then promptly held on the agreed-upon date of November 29, 2023. Notably, Plaintiff fails to cite to a specific code section of the Federal or Local Rules under which it seeks such relief. Prior decisions are directly contrary to Plaintiff's position under the circumstances here:

> Finally, I will deny Defendant's Motion with respect to its request "for the fees and costs expending in preparing for the deposition of Plaintiffs' expert." (DE 16 at ¶ 15). The deposition of Plaintiffs' expert has been rescheduled, not cancelled. As such, the time and costs spent preparing for the deposition have not gone to waste because Mr. Hopgood will still be deposed. Moreover, Federal Rule of Civil Procedure 30(g) contemplates the recovery of expenses when a party or attorney appears in person "expecting a deposition to be taken." Because Plaintiffs' counsel informed Defendant that Mr. Hopgood had a conflict and that the deposition would not proceed as scheduled, Defendant should not have appeared expecting his deposition to be taken.

*Bockelmann v. USAA Cas. Ins. Co*., No. 21-81080-CV, 2022 WL 981961, at *2 (S.D. Fla. Feb. 11, 2022).

Plaintiff's reliance on the cases cited in its Motion is misplaced because they involve bad-faith misconduct of parties that blatantly violated discovery orders. For example, in *Hartford Fire Insurance Company v. New York Mart*

*Group, Inc.* (S.D. Fla., Mar. 21, 2022) 2022 WL 3682082, at *13, the court awarded attorney's fees and costs under Rule 37(b)(2)(C) based on failure to comply with a discovery order. That is not the case here. There is nothing in this Court's May 18, 2023 Order that Plaintiff was entitled to take a 30(b)(6) deposition for purposes of conducting "discovery on discovery."[12] In fact, during the hearing, this Court explicitly denied such an "initial" 30(b)(6) deposition. (Hr'g Tr. at 23:13-17). Even if there was such an Order, Defendants fully complied and engaged in good faith efforts to accommodate Plaintiff's deposition.

Further, Plaintiff neglects to mention that it waited months after the May 18, 2023 hearing to notice its "initial" 30(b)(6) deposition, further undermining its mistaken interpretation of the May 18 Order that Plaintiff had the right to set a 30(b)(6) deposition to explore non-substantive issues and then a further 7-hour 30(b)(6) deposition directed to the merits.[13]

Moreover, Fed. R. Civ. P. 30(b)(6) requires that "[b]efore or promptly after

---

[12] *See* Dkt. 60. "ENDORSED ORDER denying without prejudice [53] Motion to Compel for the reasons stated at the hearing. The Motion is denied as to Rumble USA without prejudice. As to Rumble Canada, within five (5) days of the date of this Order, Rumble Canada must provide responsive documents or, if no such documents exist, Rumble Canada must certify pursuant to Rule 26(g) no such responsive documents exist. Additionally, within five (5) days of the date of this Order, Rumble Canada must respond to Plaintiff's interrogatories, which may be done by incorporation to Rumble Canada's non-infringement/invalidity contentions, and certify the responses pursuant to Rule 26(g)."

[13] Throughout this case, Plaintiff has "gone silent" for long periods of time. Plaintiff's contention that modifications to the Case Schedule were due to imaginary discovery abuses by Defendants is incredible. Indeed, the most recent request for extension included the following statement as an additional basis for the extension: "Plaintiff's counsel anticipates that it will have limited availability over the next two months." (Dkt. 73, p. 2)

the notice … is served, the serving party and the organization deponent must confer

in good faith about the matters for examination." Nevertheless, Plaintiff rebuffed

Rumble's requests to discuss narrowing the overly broad deposition topics.[14]  As

such, Plaintiff's request for fees and costs associated with proceeding with the first

30(b)(6) deposition is unwarranted.

## V.     PLAINTIFF'S ASSERTION THAT RUMBLE'S CORPORATE REPRESENTATIVES LACKED KNOWLEDGE REGARDING THE NOTICED TOPICS IS UNSUPPORTABLE

As pointed out above, Plaintiff's Motion relies only on vague assertions

without any substantive evidence in support.

The excerpts from the deposition transcripts fatally undercut Plaintiff's

baseless position.  For example, Walter Sturm, who is the CDN Architect for

Rumble, testified on the Rumble CDN system and the documentation relating to it.

As part of his preparation, Mr. Sturm reviewed the documents relating to ICE's

complaint and interviewed his colleagues who are knowledgeable with Rumble's

practices and procedures for creating and storing documents describing Rumble's

online video platform.  *See* Sturm Depo. at 6:1-20; 11:4-15; 11:20-12:3; 12:24-

13:13; 14:18-15:3; 16:24-17:21; 18:24-19:7; 20:18-25; 25:1-8; 33:1-5.  Rumble's

second corporate witness, Michael Ellis, General Counsel to all the Rumble

companies, testified about Rumble's corporate structure, how the description of

---

[14] Defendants' counsel even offered to draft narrower topics for discussion, but was told by Plaintiff's counsel that the 30(b)(6) topics in its Notice would not be revised.

Rumble's CDN system set forth in Rumble's Non-Infringement Contentions was prepared, and the manner in which Rumble searched and collected its ESI responsive to Plaintiff's requests. *See* Ellis Depo. attached hereto as **Exhibit 2** at 22:13-21; 24:19-24; 25:12-16; 25:24-26:2; 26:3-11; 28:10-16; 29:1-7; 31:1-14.

The testimony of Rumble's 30(b)(6) witnesses plainly illustrates they were sufficiently knowledgeable regarding the noticed topics and prepared to provide proper testimony, and that they did so.

## VI.  PLAINTIFF'S REQUEST FOR AN ADDITIONAL 7-HOUR 30(b)(6) DEPOSITION IS UNWARRANTED

In the "Meet & Confer" on this issue, Plaintiff not only demanded a second 30(b)(6) deposition, but wanted a full 7 hours of testimony time for the second deposition.  This would have been on top of the approximately 4.5 hours of testimony taken during the first deposition.  Plaintiff's rationale for this request was that in Plaintiff's view, "**the first deposition didn't take place**."

Notwithstanding this novel position taken by Plaintiff, in an effort to compromise on this issue Defendants were willing to consider agreeing to additional time beyond the approximately 2.5 hours not used in the first deposition, but were unwilling to accept the premise that the first 4.5 hour deposition "didn't take place" such that Plaintiff was entitled to another 7 hours.

While courts acknowledge that "[t]here is a split among courts as to whether a party may perform multiple Rule 30(b)(6) depositions only upon leave of court,"

courts in this District have concluded that leave of Court is required, given the language of Fed. R. Civ. P. 30(a)(2)(A)(ii). *Ruiz v. Sharkninja Operating LLC*, 2023 WL 2456509, at *1, n.3 (M.D. Fla., Mar. 10, 2023) (quoting *Clark v. FDS Bank*, 2019 WL 12262469, at *1 (M.D. Fla. Dec. 9, 2019)). These cases also confirm that there must be a good faith and reasonable justification for allowing a second deposition.

Here, Plaintiff's assertion that it is entitled to take a second 30(b)(6) deposition centers on its misreading of the Court's instructions provided during the May 18, 2023 hearing. While this Court reviewed the general manner in which Plaintiff can take depositions, the Court explicitly denied Plaintiff's request to take an "initial" deposition for purposes of conducting "discovery on discovery."

Plaintiff is of course free to waste over 4 hours of deposition time in an attempt to manufacture a discovery dispute. Having done so, however, Plaintiff is not entitled to a "mulligan" and an additional full 7 hours of deposition testimony. Plaintiff is entitled at most to its remaining 2.5 hours.

## VII.  CONCLUSION

Given the failures of Plaintiff's case on both the facts and the law, Plaintiff seeks to force the case to turn on discovery orders. But there is as little merit to Plaintiff's discovery complaints as there is to its legal claims. There simply is no real discovery dispute in this case.

Defendant's counsel met and conferred with Plaintiff's counsel prior to the filing of Plaintiff's Motion in an effort to identify what exactly Plaintiff's discovery issue is and what discovery Plaintiff claims it is missing. Plaintiff was as vague at the parties' discovery conference as it is in its Motion. The facts are that Defendants (1) complied with this Court's May 18, 2023 discovery order, (2) provided detailed non-infringement/invalidity contentions, which it incorporated in its discovery responses and certified pursuant to Rule 26(g), (3) created new, detailed documentation laying out the architecture of the Rumble CDN system and provided it to Plaintiff, (4) gathered documents responsive to Plaintiff's discovery and conducted additional document searches using search terms provided by Plaintiff, and produced over 50,000 pages of discovery, and (5) produced 2 fully-prepared witnesses for a 30(b)(6) deposition taken nearly 2 months ago on a date convenient to all counsel and witnesses, at which the witnesses answered every question. Yet Plaintiff persists in its vague complaints and resists advancing the case towards resolution. Enough is enough. Rumble respectfully requests this Court deny Plaintiff's Renewed Motion to Compel and Motion for Discovery Sanctions.

Dated: January 26, 2024          Respectfully submitted,

**BURKE, WILLIAMS & SORENSEN, LLP**

By: _/Robert W. Dickerson, Jr./_

Robert W. Dickerson, Jr.
(*Admitted Pro Hac Vice*)
rdickerson@bwslaw.com
Allan W. Jansen
(*Admitted Pro Hac Vice*)
ajansen@bwslaw.com
**BURKE, WILLIAMS &
SORENSEN, LLP**
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Telephone:    213.236.0600
Facsimile:    213.236.2700
J. Todd Timmerman
Florida Bar No. 0956058
ttimmerman@shumaker.com
Mindi M. Richter
Florida Bar No. 0044827
mindi.richter@shumaker.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone: 813.227.2243
Facsimile: 813.229.1660

*Counsel for defendants Rumble USA
Inc. and Rumble Inc. (n/k/a Rumble
Canada Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.

/s/      /Robert W. Dickerson, Jr./
         Robert W. Dickerson, Jr.